**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER RE DEFENDANT'S** |
| | ) | **DISCOVERY MOTIONS AT** |
| vs. | ) | **DOC. NOS. 33, 46, 58, 63, & 71** |
| | ) | |
| Michael Arthur Giron, a/k/a | ) | Case No. 1:17cr-0031 |
| Michael Geron, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant is charged in this criminal proceeding arising out of the protests over the Dakota Access Pipeline with the offenses of engaging in civil disorder and using a fire to engage in civil disorder. Presently, the trial is scheduled for April 20, 2018.

On April 21, 2017, and pursuant to the stipulation of the parties, the courted entered its Stipulated Discovery Order and Protective Order ("Stipulated Discovery Order"). What is now before the court is a series of discovery motions made by the defendant that seek additional court orders, some of which are already the subject of the Stipulated Discovery Order and some that go beyond what the court has already ordered.

## I.    MOTION TO COMPEL DISCOVERY (DOC. NO. 33)

In response to this motion, the Government states it has produced the items and material requested by defendant to the extent the government has them in its possession. In reply, defendant acknowledges the government has recently turned over a massive amount of information that his attorneys have not yet been able to review, so he is not in a position to disagree with what the government has stated. In light of this, defendant agrees no further action is required by the court now, but he wishes to preserve his right to renew his requests later if it appears that what the government has turned over is incomplete.

1

Given this state of affairs, defendant's Motion to Compel Discovery (Doc. No. 33) is **DENIED WITHOUT PREJUDICE** to the filing of another more specific motion.

## II. MOTION FOR DISCOVERY OF RECORDS OR REPORTS AND FACTS OR DATA UNDERLYING EXPERT OPINIONS (DOC. NO. 46)

### A. Introduction

Defendant in this motion seeks to discover certain information relating to any expert opinions that may be offered by the government at trial and requests that the court order it be turned over at least 30 days prior to trial. The government agrees with some of the requests and objects to others. The government also requests that anything the court orders with respect to the disclosure of expert evidence be made reciprocal. Defendant's requests will be addressed seriatim.

### B. Particular discovery requests re expert opinions

1. *All materials that served as a basis, in any way, of a government expert's opinion, including photos, field notes, video, chemical analysis, witness statements, trace analysis, other scientific testing, expert treatises, information for other experts, logs, inventories, audio recordings, and all other material reviewed, considered, generated or produced during the formation of the opinion*

Under Fed. R.Crim. P. 16(a)(1)(G), the government is required to provide a "written summary" of any expert testimony it intends to offer once the defendant makes a request for the information. The summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Most of what defendant seeks appears to fall within what Rule 16(a)(1)(G) already requires. And, since the government has indicated it will timely comply with the Rule's requirements (and is required to do so in any event), no further action is required by the court at this point.[1] However, to the extent defendant's request can be read as

---

[1] As part of its response to this item, the government stated that "tangible, relevant information has been or will be timely provided." Defendant objects to the addition of the qualifier "tangible" in the government's response. While Fed. R. Crim. P. 16(a)(1)(G) does not use that term, the court does not read the government's response as an attempt to limit what it has agreed (or is otherwise obligated) to provide under Rule 16 and the Stipulated Discovery

requiring more than what Rule 16(a)(1)(G) requires (*e.g.*, identifying everything the expert reviewed regardless of whether it forms a basis for his or her opinions), defendant's request is denied.

2.   *Each Government expert's resume*

Fed. R. Crim. P. 16(a)(1)(G) already requires that the government provide a summary of the qualifications of any expert it intends to call once the defendant makes a request for this information. In any event, the government agrees to provide resumes on a timely basis; hence, no court action is required.

3.   *Training materials, texts, treatises, memorandum, handouts, or other writings or police training materials utilized, considered or relied upon to reach or justify expert opinions rendered at trial by any government witness that will be tendered as an expert whether affiliated with law enforcement or not*

The government objects to this request to the extent it can be construed as requiring production of every treatise, training material, handout, etc., ever seen by the expert in his or her training and upon which the expert's general professional knowledge is based. The government contends this goes beyond what is contemplated by Rule 16. The court agrees. The government need only disclose pursuant to Rule 16(a)(1)(G) the material upon which the expert is expressly going to rely upon as a basis for his or her opinion. Further, it is sufficient that the government identify that material. If the identified material is not reasonably available to the defendant or is otherwise discoverable under subsection (a)(1)(E), the court will consider a motion by defendant for production of a copy if the government does not voluntarily provide it. Consequently, no further court action is required now.

---

Order. Rather, in the context the word was used, it appears merely to have been an attempt to distinguish what is ephemeral.

4. *Any and all case files, reports, statements, memorandum, notes, video or audio tape recordings relating to any prior cases or investigations upon which law enforcement government witnesses relied upon to render any expert opinions in this case*

The government objects to this request on the grounds that its is vague and overbroad. While that might be, there is no reason to believe that the government will not identify in its summary of any expert witness the material relied upon for the opinions. Consequently, no further court action is required.

5. *Any other information which may serve, to any extent, as the facts or data underlying any expert opinion*

The government objects to this request on the grounds that it is vague and overbroad. As noted earlier, Rule 16(a)(1)(G) requires that the government provide a summary of its anticipated expert testimony and that the summary set forth not only the witness's opinions, but also the "bases and reasons" for the opinions. To the extent this request seeks something more, it is denied.

### C. Defendant's reciprocal disclosure obligations and the timing of the expert disclosures

In the Stipulated Discovery Order, the government made a formal request that defendant make comparable expert disclosures pursuant to Rule 16(b)(1)(C). Also, in its response to this motion, the government has repeated that request. Hence, the court's order will address the discovery obligations of both the government and defendant.

Defendant requests the government be required to make its disclosure of expert evidence thirty days prior to trial. The government agrees to the thirty days, but requests the same time deadline be set for the defendant. The court concludes this is appropriate and also will order a time deadline for disclosure of rebuttal expert evidence. See United States v. Petters, No. 08–364, 2009 WL 10761999, at *3 (D. Minn. March 26, 2009) (ordering deadlines for initial and rebuttal expert disclosures).

**D.      Court's order**

Based on the foregoing, defendant's motion (Doc. No. 46) is **GRANTED IN PART**.  The

government must comply with the requirements of Rule 16(a)(1)(G) and defendant must comply with

the requirements of Rule 16(b)(1)(C).  And, since these requirements are clear enough, there is no

need to parse them further now, particularly given the generality of defendant's motion.  In addition,

the government and defendant shall both disclose their expert evidence thirty days prior to trial and

disclose any rebuttal expert evidence fifteen days prior to trial.  Finally, to the extent defendant seeks

discovery beyond what Rule 16(a)(1)(G) provides, the request is **DENIED**.

**III.      MOTION FOR PRIVILEGE LOG (DOC. NO. 58)**

Defendant seeks an order requiring that the government provide it with a privilege log of all

material it is withholding pursuant to paragraph 2 of the Stipulated Discovery Order, which reads,

in relevant part, as follows:

> The United States may redact or withhold information from the open discovery file for
> security concerns or to protect an ongoing investigation. This does not preclude the
> defendant from requesting in camera review of such material by the Court, upon proper
> showing, in order to determine whether or not it should be disclosed in accordance with Fed.
> R. Crim. P 16. Where the United States withholds information from its standard discovery
> file, notice of the withholding, along with a general description of the type of material
> withheld, will be included in the discovery file.

(Doc. No. 25).  Defendant further requests that the court order that the privilege log be updated each

time the government withholds information that is the subject of paragraph 2 of the Protective Order.

The government responds by stating that it has not withheld any information pursuant to

paragraph 2.  The government states that the only things it has withheld so far are normal redactions

for personal identifying information and email addresses and that it has provided the defendant  the

information when it has been requested.  Defendant, in his reply, does not dispute the government's

representation that it has not so far withheld any formation pursuant to paragraph 2, but contends that the government should be ordered to prepare a privilege log going forward.

While it would be within the power of the court to order that the government produce a privilege log and that may be appropriate in some cases, Fed. R. Crim. P. 16 does not contain a provision comparable to Fed. R. Civ. P. 26(b)(5)(A)(ii), which requires in civil cases that a party withholding information based on claim of privilege "describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Further, there is no indication that the lack of any comparable provision in Fed. R. Crim. P 16 was an oversight. Most probably, it is the consequence of the differing and more limited provisions for discovery in criminal cases.

In short, this is a matter left to the substantial discretion of the court. Cf., United States v. Wirth, No. 11-256, 2012 WL 1580991, at *2 (D. Minn. May 4, 2012) (noting the absence of any requirement for a privilege log and concluding that one was not warranted); United States v. Jack, 263 F.R.D. 640, 646 (E.D. Cal. 2010) (same). In this case, the court concludes that a privilege log is not warranted. For one thing, defendant has not provided sufficient cause for this court to be concerned that the government will not comply with its discovery obligations. Second, paragraph 2 of the Stipulated Discovery Order provides its own mechanism for alerting the defendant of any material withheld pursuant to that paragraph.

Defendant's Motion for Privilege Log (Doc. No. 58) is **DENIED**.

## IV. MOTION FOR PRESERVATION OF "ROUGH NOTES" OR "FIELD NOTES" (DOC. NO. 63)

### A. Introduction

Defendant seeks an order requiring that law enforcement "rough notes" or "field notes" be (1) preserved and (2) produced to the defendant for examination at least 45 days prior to trial or, if not produced to the defendant, turned over to the court for an *in camera* inspection. In support of the motion, the defendant relies upon: (1) Fed. R. Crim. P. 16; (2) the Jencks Act (18 U.S.C. § 3500); and (3) the government's obligation under the Due Process Clause to produce exculpatory and impeachment material pursuant to Brady,[2] Giglio,[3] and their progeny.

The government responds by stating that rough notes or field notes (collectively referred to herein as "raw notes" for purposes of the discussion that follows) are not one of the listed items for which discovery is permitted under Fed. R. Crim. P. 16(a)(1) and are expressly made not discoverable under the provisions of subsection (a)(2). With respect to the Jencks Act, the government contends that raw notes are not "statements" within the meaning of the Act. As for the government's obligations under Brady/Giglio, the government's response is more opaque, stating only that defendant has offered nothing more than speculation that any raw notes contain such material, so an *in camera* inspection is not warranted at this time. Notwithstanding these points, the government offers:

> The United States will make every reasonable effort to preserve and obtain any currently existing field notes and disclose them as required by the relevant discovery rules. The information regarding all relevant (including exculpatory) statements has been, and will continue to be, provided to defendant as it becomes available to the United States.

(Doc. No. 69, p. 5) (emphasis in original).

---

[2] Brady v. Maryland, 373 U.S. 83 (1979).

[3] Giglio v. United States, 405 U.S. 150 (1970).

Because of the differences between the parties with respect to whether, or in what instances, raw notes are subject to disclosure under Rule 16, the Jencks Act, or as a matter of due process pursuant to Brady/Giglio, some discussion of these points is required since it forms the basis for what the court will order below. Also, it may provide some guidance to the parties moving forward.

Part of the problem here appears to be the one of definition, including treating raw notes of government agents as all being the same. For purposes of what follows, there appears to be *at least* four categories of potential raw notes of government agents:

1. raw notes of interviews with witnesses;

2. raw notes of interviews or interrogations of the defendant;

3. raw notes of a governmental agent who is called to testify as a fact witness about what the agent saw or heard; and

4. raw notes that relate to investigative matters apart from the foregoing, *e.g.*, notes reflecting thoughts about whether a crime had been committed and by whom, leads to be followed, coordination of the investigation, etc.

Further, there are differences between raw notes in terms of their specificity and completeness. Some may be nothing more than incomplete and disjointed words on a piece of paper to serve as reminders. Others may contain a detailed recitation of what a witness or a defendant stated to a government agent or what the agent personally witnessed, such that, if other criteria are satisfied, may subject the raw notes to discovery or other production. Finally, when the raw notes were generated and by whom may also be relevant with respect to whether they are discoverable or otherwise subject to disclosure. For example, as noted later, it may make a difference if the raw notes were generated by state or local law enforcement officials as opposed to federal investigators.

**B.      Fed. R. Crim. P. 16(a)(1)**

**1.      Raw notes of government agents generally**

Fed. R. Crim. P. 16(a)(2) excludes from discovery certain government "work product" as follows:

> (2) Information Not Subject to Disclosure. Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

Many (if not most) raw notes of government agents fall within this provision and are not discoverable Rule 16.  See, e.g., United States v. Malone, 49 F.3d 393, 396 (8th Cir.1995);  United States v. Van Doren, No. 5:12-cr-50035, 2013 WL 2368994, at *1 (W.D. Ark. May 29, 2013); United States v. Wirth, No. 11–256, 2012 WL 1110540, at *4 (D. Minn. April 3, 2012);  United States v. Frederick, No. Cr-10-30021, 2010 WL 3981421, at *2 (D.S.D. Oct. 6, 2010); see also United States v. Roell, 487 F.2d 395, 401 (8th Cir. 1973).  But, to be clear, subsection (a)(2), by its terms, only addresses what is not discoverable under Rule 16; it does not trump any independent obligation of disclosure under the Jencks Act or as a matter of due process under Brady/Giglio.  See, e.g., United States v. Wirth, 2012 WL 1110540, at **2-3.

**b.      Raw notes of interviews or interrogations of a defendant**

As the lead-in proviso to Fed. R. Crim. P. 16(a)(2) makes clear, not all documents prepared by governmental agents are excluded from discovery under subsection (a)(2).  Among those are statements made by a defendant, which may be discoverable under subsection (a)(1)(A)-(C).  And, relevant here are the number of courts which have held that raw notes of an interview or interrogation of a defendant are discoverable in some instances under one more of the provisions

of Rule16(a)(1)(A) -(C), particularly (a)(1)(B)(ii), which was added to Rule 16(a)(1) in 1991 and reads as follows:

> (ii) *the portion of any written record* containing the substance of *any* relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent[.]

(emphasis added).  See, e.g., United States v. Clark, 385 F.3d 609, 619-20 (6th Cir. 2004); United States v. MST Mineralien Schiffarht Spedition und Transport GMBH, No. 2:17-cr-00117, 2017 WL 5585718, **2-3 (D. Me. Nov. 19, 2017); United States v. Heine, 314 F.R.D. 498, 513-14 (D. Ore. 2016);  United States v. Hackett, No. 1:11-cr-51, 2011 WL 5323506, at **8-11 (N.D. W. Va. Sept. 30, 2011); United States v. Ferguson, 478 F. Supp. 2d 220,  235-38 (D. Conn. 2007); United States v. Stein, 424 F. Supp. 2d 720, 728-29 (S.D.N.Y. 2006); United States v. W. R. Grace, 401 F. Supp. 2d 1087, 1091 (D. Mont. 2005); United States v. Vafflee, 380 F. Supp. 2d 11, 12-14 (D. Mass. 2005); United States v. Mohammed Almohandis, 307 F. Supp. 2d 253, 257 (D. Mass. 2004).  Also, in  United States v. Clark,  supra,  the Sixth Circuit rejected the government's contention that disclosure of the government agent's written summary of the interview was sufficient.  The court stated:

> The government argues that no Rule 16 violation occurred because Rule 16(a)(1)(A) of the Federal Rules of Criminal Procedure requires the government to disclose only the "substance" of the defendant's oral statements that the government intends to use at trial and that it disclosed the substance by producing Agent Poff's interview summary. The government, however, ignores Rule 16(a)(1)(B)(ii), which additionally requires the disclosure of "*the portion of any written record* containing the substance" of such an oral statement. This rule imposes a more specific disclosure obligation than Rule 16(a)(1)(A), and Agent Poff's notes, by definition, constitute a portion of a written record containing the substance of Defendant's interview. Accordingly, the government violated Rule 16 by failing to turn over Agent Poff's rough notes upon Defendant's request.

385 F.3d at 619 (italics in original).[4]

_____

[4]  A good example of how preservation and disclosure of raw notes of an interview of the defendant helped the government is United States v. Gomez, 494 Fed.Appx. 159 (2d Cir. 2012).   In that case, the Second Circuit relied in part upon the raw notes that had been produced in deciding that the government had fully complied with its discovery obligation under Rule 16(a)(1)(A)-(C)  to disclose oral statements made by the defendant.  The court stated:

Without conceding the correctness of the foregoing cases, the Department of Justice has acknowledged the force of this precedent in an internal memorandum prepared in 2010 by then Deputy Attorney General David Ogden (the "Ogden Memorandum") that has now been incorporated in the Criminal Resource Manual for all federal prosecutors. In relevant part, the Ogden Memorandum states:

> c.     Agent Notes: Agent notes should be reviewed if there is a reason to believe that the notes are materially different from the memorandum, if a written memorandum was not prepared, if the precise words used by the witness are significant, or if the witness disputes the agent's account of the interview. Prosecutors should pay particular attention to agent notes generated during an interview of the defendant or an individual whose statement may be attributed to a corporate defendant. Such notes may contain information that must be disclosed pursuant to Fed.R.Crim.P. 16(a)(1)(A)-(C) or may themselves be discoverable under Fed.R.Crim.P. 16(a)(1)(B). See, e.g., United States v. Clark, 385 F.3d 609, 619-20 (6th Cir. 2004) and United States v. Vaffee, 380 F.Supp.2d II, 12-14 (D. Mass. 2005).

USDOJ, Office of the United States Attorneys, Criminal Resource Manual, Part 165. Guidance for Prosecutors Regarding Criminal Discovery, Step 1(B)(8)(c) (last accessed on December 7, 2017).[5] Further, in a Third Circuit case, the government conceded on appeal that the raw notes of the interrogation of the defendant by governmental agents in that case were discoverable under Rule 16(a)(1). United States v. Molina–Guevara, 96 F.3d 698, 705 (3d Cir.1996).

There is authority to the contrary, however, including post-1991 cases holding that a governmental agent's rough notes of a defendant's oral statements are not subject to discovery under Rule 16(a)(1)(A)-(C). The most noteworthy are the Fifth Circuit's decision United States v. Brown, 303 F.3d 582 (5th Cir. 2002) and the Seventh Circuit's decision in United States v. Muhammad, 120

---

> Most importantly, the government did disclose the most critical part of Vazquez Gomez's prior oral statement when it turned over Agent Payne's interview notes stating, in relevant part: "1999–paid $500–knew it was a real number." Given Vazquez Gomez's written statement, which identified his purchase of at least some of the false identification documents in 1999 for $500, Agent Payne's notes alerted the defense to the substance of Vazquez Gomez's admission that he knew he was using the means of identification of a real person.

Id. at 161.

    [5] The Criminal Resource Manual is located at https://www.justice.gov/usam/criminal-resource-manual.

F.3d 688, 699 (7th Cir. 1997). Other courts have questioned these decisions because of their failure to consider the 1991 change to Rule 16 adding the language of (a)(1)(B)(ii). See, e.g., United States v Ferguson, 478 F. Supp. 2d at 236; United States v. Vafflee, 380 F. Supp. 2d at 12-15; United States v. Mohammed Almohandis, 307 F. Supp. 2d at 256. In terms of the Eighth Circuit, neither party has cited a decision directly on point - much less a case decided after the 1991 changes to Rule 16(a)(1).[6] In this case, the court need rule on this point now because it is not clear either from defendant's motion or the government's response that any potentially qualifying statements have been obtained from the defendant.[7] Consequently, in the order that follows, the court will allow the defendant to make a more targeted motion for raw notes if the defendant has made statements to governmental agents. Then, if statements were made, raw notes taken, and the government does not voluntarily produce them, the court can decide the question in the context of the actual facts and circumstances. For example, who took the statements and whether they were in response to questions of a government agent, as opposed to simply being unsolicited utterances, may be relevant depending upon the grounds for discovery or disclosure of the raw notes.

### B. Jencks Act & Fed. R. Crim. P. 26.2

### 1. Raw notes of a witness interview by a governmental agent

The Jencks Act requires the government "to produce any statement of the witness in the possession of the United States which relates to the subject matter as to which the witness has

---

[6] Defendant cites to United States v. Fallen, 498 F.2d 172, 174-75 (8th Cir. 1974). However, what appears to have been at issue in that case were written summaries prepared by government agents of oral statements made by the defendant and not raw notes. In fact, in cases decided after Fallen, the Eighth Circuit stated it was expressing no opinion on whether raw notes from an interview of the defendant were subject to discovery under the version of Fed. R. Crim. P 16(a)(1) in effect at the time. United States v. Eisler, 567 F.2d 814, 818 n.6 (8th Cir. 1977); United States v. Finnigan, 504 F.2d 1355, 1357 (8th Cir. 1974).

[7] Defendant's motion does not make specific reference to any interviews or interrogations of the defendant. And, while the motion makes passing reference to cases holding that raw notes of interrogations of a defendant are discoverable under Rule 16, this appears to be in support of his more general contention that raw notes of law enforcement officer interviews of witnesses are discoverable.

testified." 18 U.S.C. § 3500(b). For purposes of the Act, the term "statement" is defined in subsection (e) to mean:

> (1) a written statement made by said witness and signed or otherwise adopted or approved by him;

> (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

> (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

Fed. R. Crim. P. 26.2 incorporates the requirements of the Jencks Act. In addition, unlike the Jencks Act, it imposes a reciprocal obligation of disclosure upon the defendant for defense witness statements (excepting those of the defendant) that relate to the subject of their testimony.

The narrow definition of "statement" under the Jencks Act and Rule 26.2 excludes most raw notes of witness interviews by government agents. See, e.g., United States v. Jewell, 614 F.3d 911, 925-26 (8th Cir. 2010); United States v. Finnigan, 504 F.2d 1355, 1356 (8th Cir. 1974). Nevertheless, there are situations in which the raw notes may constitute a "statement" under the Jencks Act, e.g., where the witness has signed or otherwise adopted the raw notes as his or her statement (such as the notes being read to the witness and the witness agreeing) or if the raw notes set forth a substantially verbatim recital of the witness's oral statement as opposed to only notes of the same. See, e.g., United States v Goldberg, 425 U.S. 94 (1975) (notes made by government attorneys during interviews of a government witness may be statements within the meaning of the Jencks Act if the notes were read back to the witness and the witness affirmed what was reflected in the notes); United States v. Smith, 984 F.2d 1084, 1086 (10th Cir. 1993) ("Interview notes could be 'statements' under the Act if they are substantially verbatim."); Kane v. United States, 431 F.2d 173, 174-75 (8th Cir. 1970) (suggesting that the raw notes of the witness interview in that case would be subject to production under the Jencks Act if the witness had signed or otherwise approved

them); cf., <u>United States v. Bolden</u>, 545 F.3d 609, 624 (8th Cir. 2008) (raw notes of a witness interview were not subject to production under the Jencks Act because no showing made that the witness "signed the notes or otherwise approved them"); <u>United States v. Finnigan</u>, 504 F.2d at 1356 (notes of witness interviews made by government agents not subject to disclosure under the Jencks Act where the witnesses had neither signed nor otherwise adopted or approved them and the notes were not a substantially verbatim recital of oral statements made by witnesses).

### 2. Raw notes of a governmental agent who is called to testify as a fact witness about what the agent saw or heard

For a government agent who is called to testify as a fact witness, the agent's report of what the agent saw or heard is a "statement" within the meaning of the Jencks Act. <u>E.g.</u>, <u>United States v. New</u>, 491 F.3d 369, 374-76 (8th Cir.2007). At least in some instances, the same may be true for the agent's notes, particularly if the notes are more than few disjointed words on a piece of paper and convey a recollection of what was seen or heard, since textually the notes would meet one of the criteria for being a "statement" under the Act (<i>i.e.</i>, in writing, adopted by the agent, and a statement).

### C. <u>Brady/Giglio</u>

The government has not attempted to argue in response to defendant's motion that it does not have an obligation to turn over all or portions of any raw notes of a government agent that contain <u>Brady</u>/<u>Giglio</u> material. There is a good reason for why the government did not contend otherwise. <u>See</u>, <u>e.g.</u>, <u>United States v. Andrews</u>, 532 F.3d 900, 906 (D.C. Cir. 2008) ("Contrary to the government's contention in the district court, '[i]t seems too plain for argument that rough notes from any witness interview could prove to be Brady material.' [citing authority omitted]"); <u>United States v. Service Deli, Inc.</u>, 151 F.3d 938, 943 (9th Cir. 1888) ("After comparing the hand-written notes to the government's typewritten summary and reviewing the arguments of the parties, we

conclude the government violated the due process rights of the defendant by failing to disclose material information contained in the December 6 notes."); United States v. Van Doren, 2013 WL 2368994, at 2 ("there is no indication that the field notes made by government agents of witnesses contain 'exculpatory' evidence, which would be required to be produced under Brady v. Maryland."); United States v. Mansker, 240 F. Supp. 2d 902, 906-07 (N.D. Iowa 2003) (prohibiting government witness from testifying as a sanction for the government failing to turn over information constituting Brady material including raw notes from an interview of the witness); cf. United States v. Bolden, 545 F.3d 609, 622-23 (8th Cir. 2008) (concluding that the failure to disclose raw notes made by an FBI agent of a government witness did not violate Brady based on the lack of evidence that the notes contained exculpatory material); United States v. Greatwalker, 356 F.3d 908, 911-12 (8th Cir. 2004) (Brady not violated, even if the agent's handwritten notes constituted such material, because the notes were produced at trial and no showing was made that the failure to produce them earlier was prejudicial).

## D.    Defendant's request for preservation of the raw notes

The government states that it is currently not aware of any raw notes meeting the defendant's request.[8] However, as noted earlier, the government agrees that it will make reasonable efforts to

_____

[8]   The government then goes on to add that "if law enforcement agents did make rough notes, it is likely that such notes have been incorporated into typewritten reports and thus may not have been preserved, as has been sanctioned by the Eighth Circuit . . . [case citations omitted]." (Doc. no. 69, p. 2). To say that the Eighth Circuit has "sanctioned" the destruction of raw notes, even when a subsequent report incorporating them is prepared, is questionable for reasons stated in a moment. Further, it ignores the situations in which a subsequent report has not been prepared or the subsequent report does not fully and fairly encompass the contents of the raw notes.

The Eighth Circuit did suggest in a couple of older cases there was no duty to preserve raw notes after a subsequent report is prepared. But, even in those cases, this was limited to when the subsequent report fairly incorporated what was in the raw notes with no material differences (so theoretically there would be no loss of Jencks Act or Brady/Giglio information) and the destruction of the notes was not done in bad faith. See, e.g., United States v. Kuykendall, 633 F.2d 118, 119-120 (8th Cir.1980) (concluding that the trial court had not erred in failing to hold a pretrial evidentiary hearing to address the destruction of the raw notes because the defendant had offered at that point nothing more than speculation there was bad faith or the possibility the notes contained exculpatory material and because the trial court stated the defendant would have a later opportunity to prove these assertions, which the defendant did avail himself of during cross-examination at trial) ; United States v. Williams, 604 F.2d 1102, 1116–17 & n.7 (8th Cir.1979) (concluding there was no evidence in that case that the handwritten notes had been destroyed in bad faith "or that the

preserve any currently existing raw notes.  This agreement is not surprising in view of the foregoing.

---

notes contained anything not contained in the reports" and stating in a footnote: "We do not decide whether, in the future, rough notes of law enforcement officers, even though incorporated into reports disclosed during trial, should be retained and produced at trial.").

Further, in recognition that raw notes may sometimes contain Jencks Act and <u>Brady</u>/<u>Giglio</u> material, the Eighth Circuit in subsequent cases formalized a three-factor analysis for addressing claims that the destruction of the raw notes after preparation of a subsequent report resulted in a loss of Jencks Act and <u>Brady</u>/<u>Giglio</u> material.  The Eighth Circuit held that, when such claims are made, it considers: "(1) the agent's good faith in destroying the notes, (2) the likelihood that the typewritten notes materially varied from the handwritten notes, and (3) the likelihood that appellants were prejudiced by the destruction of the notes." <u>United States v. Leisure</u>, 844 F.2d 1347, 1361 & n.10 (8th Cir. 1988) (citing <u>Williams</u> and <u>United States v. Hoppe</u>, 645 F.2d 630, 634 (8th Cir. 1981); <u>see</u> <u>also</u> <u>United States v. Grunewald</u>, 987 F.2d 531, 535 (8th Cir. 1993) ("In our review of challenges to the production of typewritten summaries where handwritten notes have been destroyed, we have considered the agent's good faith in destroying the notes, the likelihood that the typewritten notes materially varied from the handwritten notes, and the likelihood that the appellant was prejudiced by the destruction of the notes."); <u>cf.</u> <u>United States v. Greatwalker</u>, 356 F.2d at 911 ("Providing typewritten reports of interviews satisfied the Jencks Act *unless* the handwritten notes materially departed from the typewritten reports in substance or there was bad faith on the Government's part.") (emphasis added and citing <u>Grunewald</u>).

Finally, in <u>Leisure</u> (which was decided after the cases relied upon by the government), the Eighth Circuit stated the following in a footnote:

> The author is, however, troubled by the practice of shredding initial interview notes after typewritten summaries have been prepared.  Under the three-factor analysis applied by this circuit, law enforcement officials may be able to destroy with impunity evidence that would be helpful to the defense.  Evidence of "bad faith" will seldom be available to a defendant, and it is not at all clear how a defendant could demonstrate that the typewritten notes are likely to differ materially from handwritten notes which have been destroyed.  *Accordingly, the better practice is to retain handwritten notes after typewritten notes have been prepared and produce the handwritten notes at trial where called for.*  <u>See</u> <u>United States v. Williams</u>, 604 F.2d 1102, 1117 n.7 (8th Cir.1979).  While we are not prepared to hold that shredding the handwritten notes violated the Jencks Act in this case, a revised standard of review may become appropriate if the practice becomes commonplace.

<u>Id</u>. at 1361 n.10 (emphasis added).

Perhaps a better characterization of the Eighth Circuit "raw note destruction" cases is that the government puts its case at risk if it follows a practice of agent destruction of raw notes, even when formal reports purporting to incorporate them are prepared.  This is even more true in light of <u>Kyles v. Whitley</u>, 514 U.S. 419 (1995) in which the Supreme Court made clear that the government's obligations of disclosure under <u>Brady</u>/<u>Giglio</u> extend beyond the prosecutor's files to what is also in the hands of its investigators and which, notably, was decided after the cases relied upon by the government, including <u>Williams</u> and <u>Kuykendall</u>.  Further, by following a practice of not preserving the raw notes, the government may have to suffer whatever negative impressions the destruction of the notes creates for the jury if this is explored during cross-examination, not to mention the extra work in terms of motions before and after trial, potential hearings, and later issues for appeal.

Finally, the Eighth Circuit "raw note destruction" cases appear to have addressed only claims of Jencks Act or <u>Brady</u>/<u>Giglio</u> violations.  As noted earlier, there is case law holding that raw notes of defendant interviews and interrogations may themselves be discoverable under Fed. R. Civ. P. 16(a)(1)(A)-(C) even though a formal report has been prepared purportedly incorporating them.

All of this being said, the Eighth Circuit has not adopted a policy requiring raw note preservation as some courts have for certain raw notes because of the potential for destruction of  Jencks Act or <u>Brady</u>/<u>Giglio</u> material even when subsequent reports are prepared.  <u>See</u>, <u>e.g.</u>, <u>United States v. Vella</u>, 562 F.2d 275, 276 (3d Cir.1977); <u>United States v. Harris</u>, 543 F.2d 1247, 1248-53 (9th Cir. 1976); <u>United States v. Harrison,</u>, 524 F.2d 421 (1975); <u>but</u> <u>cf.</u>  <u>United States v. Mansker</u>, 240 F. Supp. 2d 902, 910-11 (N.D. Iowa 2003) (criticizing the routine destruction of raw notes and threatening to adopt an order prohibiting it for certain joint task force drug cases if the practice continued).  Further, preservation does necessarily mean production.  There are situations where the government can rightfully insist upon non-disclosure of raw notes.  And, in those situations where the defendant disagrees and can make a sufficient threshold showing, the court can review the material *in camera*.

In fact, it appears to be typical of responses made by the government to similar motions for preservation of raw notes in other districts within the Eighth Circuit. See, e.g., United States v. Garcia, No. 15-cr-260, 2016 WL 9131459, at *3 (D. Minn. May 9, 2016) (granting motion for preservation and retention of rough notes based on government's response that it had no objection to the same); Kornhardt v. United States, No. 4:13-CV-214, 2016 WL 898881, at *28 (E.D. Mo. March 9, 2016) (denial of motion to preserve and produce rough notes based on representation by the prosecutors that they had already instructed its investigators and agents to preserve investigatory materials).

In agreeing to make reasonable efforts to preserve existing raw notes, the government did not, however, make clear the scope of the efforts it would undertake. And, in this case, it might very well be that some of the investigation of the matters alleged in the Indictment was done by state or local law enforcement officers. Also, the government may be calling state and local law enforcement officers as fact witnesses. The involvement of state and local law enforcement officers may present additional issues, including the ability of the federal prosecutors to obtain the raw notes and the consequences (if any) of that inability.[9] At this point, to lessen the possibility of conflict

_____

[9] For examples of cases discussing the federal government's obligations (or lack of them) under Rule 16, the Jencks Act, and/or Brady/Giglio for material in the hands of state or local law enforcement, see, e.g., United States v. Naranjo, 634 F.3d 1198, 1211-13 (11th Cir. 2011) (stating that the Jencks Act and Brady applied only to information possessed by the federal government where the federal and state investigations were separate and distinguishing cases where there was a pooling by federal and state authorities of their investigative resources and the state investigators functioned as agents of the federal government); United States v. Moeckly, 769 F.2d 453, 463-64 (8th Cir. 1985) (noting cases holding that the Jencks Act does not apply to statements taken by state officials when there is no joint investigation or cooperation with federal authorities and concluding there was no Jencks Act violation); United States v. Escobar, 674 F.2d 469, 478-79 (5th Cir. 1982) (statements in the hands of local police are not statements in the possession of the federal government for purposes of the Jencks Act and no obligation to search the files of a state police office for exculpatory evidence); United States v. Heath, 580 F.2d 1011, 1018-19 & n.1 (10th Cir. 1978) (concluding that the failure to turn over a witness statement generated by local law enforcement violated the Jencks Act, given the close cooperation in that case between the federal prosecutors and state and local law enforcement); United States v. Ferguson, 478 F. Supp. 2d 220, 238-39 (D. Conn. 2007); (discussing the possible situations in which a joint investigation conducted by federal and state or local agencies might trigger the federal prosecutor's obligations to learn of any Brady/Giglio information in the hands of the cooperating state or local agencies); cf. United States. v. W.R. Grace, 401 F. Supp. 2d 1069, 1082-83 (D. Mont. 2005) (no obligation in that case under Rule 16 to produce information within the possession of state agencies except as it may come into the possession of the prosecution).

later, the court will order the government to make a good faith effort to seek the preservation of certain of the raw notes of state and local governmental law enforcement officers, keeping in mind that this does not constitute a ruling with respect to the scope of the government's ultimate obligations of discovery or other disclosure with respect to any raw notes.

      **E.**      **Defendant's demand for production of raw notes 45 days prior to trial either to the defendant or, in the alternative, to the court for *in camera* inspection**

In one part of defendant's motion, defendant demands that all raw notes of law enforcement officers be produced to him or turned over to the court at least 45 day prior to trial. However, later in the conclusion of the motion and also in the defendant's reply brief, there is language which suggests the demand is limited only to raw notes containing exculpatory material.

Assuming for the moment that the demand is for all raw notes, the only raw notes that arguably are discoverable under Rule 16 would be those of any interviews or interrogations of the defendant. However, as noted earlier, it is not clear whether the defendant has been interviewed or interrogated by any government agent. That being the case, the court will allow the defendant to address this subject if necessary in a more targeted motion.

The Jencks Act and Fed. R. Crim. P. 26.2 require production of qualifying statements of government witnesses only after the witness testifies. However, to avoid delays at trial, the parties have agreed in the Stipulated Discovery Order to a mutual deadline for the turnover of statements of witnesses who will be testifying either for the government or for the defendant of ten days before trial unless the statement is obtained after that date, in which case the deadline is three days before the witness testifies. The one exception appears to be for testimony of grand jury witnesses for which the Stipulated Discovery Order specifies three days prior to trial. Based on this prior agreement as well as the default rules of the Jencks Act and Rule 26.2, there is no basis now for a court order requiring production either to the court or to the defendant of any raw notes of interviews

of witnesses, even if they contain Jencks Act material.  See, e.g., United States v. Cruz, No. 15–cr–260, 2016 WL 9131123, at *3 (D. Minn. May 9, 2016) (denying an early request for production of Jencks Act material when the government did not agree); United States v. White, No. 4:11-cr-196, at *8 (E.D. Mo. Jan. 9, 2012) (same).  After the time period set for disclosure of witnesses under the Stipulated Discovery Order, both the defendant and the government  may raise with the trial judge the question of whether raw notes of any particular person who is going to be a witness need to be reviewed *in camera* because they may contain Jencks Act/Rule 26.2 material.

As for the government's obligations under Brady/Giglio, the defendant offers nothing more than the speculative possibility that any raw notes may contain such material.  This is not enough for the court now to require either the production of raw notes to the defendant or for an *in camera* inspection.  See, e.g., United States v. Van Brocklin, 115 F.3d 587, 594-95 (8th Cir. 1997) (stating it is the prosecutor's duty to determine whether any document or file constitutes Brady/Giglio material and that a district court is not obligated to conduct an *in camera* absent a colorable showing that the document or file constitutes contains such material); United States v. Roach, 28 F.3d 729, 734 (8th Cir. 1994) (trial court did not err in denying a motion for production of exculpatory evidence when defendant made no preliminary showing that the requested information was exculpatory); United States v. Krauth, 769 F.2d 473, 476 (8th Cir. 1985) (same).  Further, it must be kept in mind that the primary responsibility for complying with Brady/Giglio rests upon the government and not upon the court, particularly since prior to trial it is difficult to determine "the significance of an item of evidence until the entire record is complete."  United States v. Agurs, 427 U.S. 97, 108 (1976).[10]  Nevertheless, if defendant should develop concrete information tending to

---

[10]  It is for this reason that the "prudent prosecutor will resolve doubtful questions in favor of disclosure."  Id.; Kyles v. Whitley, 514 U.S. 419, 439 (1995) (Regardless of what the rules may technically require, "a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence.").

show more than a speculative possibility that any raw notes may contain <u>Brady</u>/<u>Giglio</u> material, the defendant can make a more targeted request.

Finally, with respect to the timing of the government's disclosure of any <u>Brady</u>/<u>Giglio</u> information, the government states that it will turn such material over to the defendant as soon as it becomes available to the United States. To the extent this may be in the form raw notes, the court has no reason to conclude at this point that the government will not comply with its <u>Brady</u>/<u>Giglio</u> obligations and promptly turn the notes (or the relevant portions thereof) over to the defendant as represented.

### C. Court's order

Based on the foregoing, defendant's motion (Doc. No. 63) is **GRANTED IN PART**. The government is ordered to: (1) preserve any currently existing raw notes of federal governmental law enforcement officers made during the investigation of the matters alleged in the Indictment; and (2) make a good faith effort to seek the preservation of any raw notes of (a) interviews or interrogations of the defendant by state or local law enforcement officers of which the government has knowledge or can reasonably be determined upon further inquiry, (b) any state or local law enforcement specifically involved in the *investigation* of the acts underlying the charges set forth in Indictment, and, (c) any state or local law enforcement agents whom the government intends on calling as witnesses. The court's order should not be taken, however, as any narrowing of the government's obligations for disclosure under the Jencks Act or <u>Brady</u>/<u>Giglio</u> or a limitation upon what the government has already agreed to produce under the Stipulated Discovery Order.

The remainder of defendant's motion is **DENIED WITHOUT PREJUDICE.** Also, if defendant has been interviewed or interrogated by any federal, state, or local law enforcement officer with respect to matters related to the charges set forth in the Indictment, defendant can make

a more targeted motion for production and *in camera* review of any raw notes made during the interview or interrogation.

## V. MOTION FOR DISCOVERY OF ALL RECORDED TELEPHONE CONVERSATIONS OF DEFENDANT WHILE IN JAIL (DOC. NO. 71)

In this motion, defendant seeks a court order requiring production of all recordings of defendant's jail-house calls. Defendant argues that the recordings of these calls are discoverable under the provisions of Fed. R. Crim P. 16(a)(1).

The government responds that it does not have possession, custody, or control of any such recordings; hence, it is under no obligation to produce them. The court agrees, being generally aware that defendant is being held in a contract facility that is not one owned or operated by the federal government.

The government goes onto state:

> The United States recognizes that if any <u>relevant</u> statements made by the defendant, whether oral, recorded, or written, or the "portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by any person then known to the defendant to be a government agent . . . ." are known to the United States, they must be disclosed. The United States will promptly disclose any such recordings that become known to the United States.

(Doc. No. 73, p.2) (emphasis in original). While this might be a correct summarization of what the government is required to turnover under paragraph (a)(1)(A) of Rule 16, it ignores the government's obligation to turnover recorded statements of a defendant under paragraph (a)(1)(B)(i), which is not limited to statements made by a defendant to a person then known to the defendant to be a government agent but is limited to statements that are within the government's possession, custody, or control.

That being said, the government has already committed to making available without further demand by defendant all statements of the defendant that are discoverable under Rule 16 (which is

limited to statements the government intends to use at trial or are otherwise "relevant," and not, for example, what might be nothing more than hours of idle chitchat with family and friends) and the court has no reason to believe that the government will not expeditiously make this material available if it comes into its possession.

Based on the foregoing, the present motion for turnover of jail-house recordings (Doc No. 71) is **DENIED WITHOUT PREJUDICE** to the filing of a later motion should circumstances change.

## VI.  <u>REQUESTS FOR HEARING</u>

With respect to each of the motions and by a separate filing at Doc. No. 72, defendant has requested that a hearing be held.  After careful review of the motions, briefs, and other supporting material, these requests are **DENIED** since what has been filed is sufficient to resolve the motions.

Dated this 18th day of December, 2017.

> */s/ Charles S. Miller, Jr.*
> Charles S. Miller, Jr.
> United States Magistrate Judge